UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DALE ANTHONY STELLY

VERSUS

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION

CIVIL ACTION

NUMBER 09-711-SCR

**RULING ON SOCIAL SECURITY APPEAL**

Plaintiff Dale Anthony Stelly brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's (Commissioner) decision denying his claim for disability and supplemental security income (SSI) benefits. Before the court is the plaintiff's petition for judicial review and appeal of the final administrative decision of the Commissioner.

**Standard of Review**

Under § 405(g), judicial review of a final decision of the Commissioner denying disability and SSI benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the relevant legal standards. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001). If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 1422 (1971); *Martinez v. Chater*, 64 F.3d 172,

173 (5th Cir. 1995). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131 at 135. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). In applying the substantial evidence standard the court must review the entire record as whole, but may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence are for the Commissioner and not the court to resolve. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

If the Commissioner fails to apply the correct legal standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v.* Bowen, 809 F.2d 1054, 1057 (5th Cir. 1981); Western *v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least twelve months that

2

prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. § 404.1505 and § 416.905. The regulations require the ALJ to apply a five step sequential evaluation to each claim for disability benefits. 20 C.F.R. § 404.1520 and § 416.920. In the five step sequence used to evaluate claims, the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity, (2) the claimant has a severe impairment(s), (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations, (4) the impairment(s) prevents the claimant from performing past relevant work, and (5) the impairment(s) prevents the claimant from doing any other work. *Masterson*, 309 F.3d at 271.

The burden of proving disability rests on the claimant through the first four steps. If the claimant shows at step four that he is no longer capable of performing his past relevant work, the burden shifts to the Commissioner to show that the claimant is able to engage in some type of alternative work that exists in the national economy. *Myers*, *supra*. If the Commissioner meets this burden the claimant must then show that he cannot in fact perform that work. *Boyd*, 239 F.3d at 705.

### **Background**

Plaintiff Dale Anthony Stelly was 46 years of age at the time of the final administrative decision to deny his applications for

3

benefits.[1] AR pp. 35, 63. Plaintiff attended school through the eleventh grade and in 1989 completed machinist training. Plaintiff past relevant work consisted entirely of employment related to machinist work. AR pp. 36, 45-47, 87-91, 116-20. The events leading up to the plaintiff's application for benefits began with a back injury he sustained on the job in May 2003. AR pp. 36, 202. After the injury the plaintiff was on a course of treatment consisting of physical therapy, epidural steroid injections, lumbar facet/median branch blocks, intradiscal electrothermal annuloplasty (IDET) and anti-inflammatory and pain medications. Plaintiff was eventually released to return to his employment at light duty. However, he continued to experience back/leg pain and limitations that required ongoing treatment. AR pp. 183-206. Plaintiff's doctor decreased his work day to 4-6 hours, but after April 27, 2004 the plaintiff did not engage in substantial gainful activity. This is the date the plaintiff alleged as the onset of his disability in the applications for benefits he filed June 30, 2006. AR pp. 63-67, 96, 101, 178.

At the end of 2004 the plaintiff's treating physician, Dr. J. Michael Burdine, referred the plaintiff to another physician, Dr. Jorge Isaza, to determine whether the plaintiff should have surgery. Because the plaintiff had three-level disc disease, Dr.

---

[1] Under the regulations the plaintiff's age placed him in the category of "younger person." 20 C.F.R. §§ 404.1563(c) and 416.963(c).

Isaza could not recommend surgery. Another MRI was obtained on July 29, 2005,[2] and after reviewing it Dr. Burdine concluded that the plaintiff's back condition was worse. In light of these facts and the failure of earlier conservative treatments, Dr. Burdine stated that plaintiff's treatment options were limited. AR pp. 153, 155, 158, 162, 166, 168-69, 171-74, 176-78. Thereafter, Dr. Burdine continued to follow-up and treat the plaintiff's back condition/pain with medications.[3]

Plaintiff filed applications for disability and SSI benefits on June 30, 2006. AR pp. 63-71. Plaintiff's application for benefits was initially denied and the plaintiff requested a hearing before an administrative law judge (ALJ). AR pp. 51-57. A hearing was held and the ALJ issued an unfavorable decision on May 11, 2008. AR pp. 5-50. The ALJ found that the plaintiff had a combination of severe impairments - residuals and pain from a back injury and depression. AR p. 10. The ALJ concluded that these impairments left the plaintiff with a residual functional capacity for sedentary work, except that the plaintiff would need to alternate sitting and standing. AR p. 11.[4]

---

[2] AR pp. 173-74. The comparison MRI was performed on October 1, 2003. AR pp. 205-06.

[3] *See,* AR pp. 244-85 (Dr. Burdine's treatment records from 2006, 2007 and 2008).

[4] At step three the ALJ found that the plaintiff's impairments did not meet or medically equal a listed impairment. The residual
(continued...)

With this residual functional capacity the plaintiff could not do the medium to heavy work he had done as a machinist. The ALJ proceeded to the final step to consider whether the plaintiff was able to perform other substantial gainful activity. Using the Medical-Vocational rules as a framework[5] and based on the vocational expert testimony of Thomas Mungall, the ALJ concluded that the plaintiff could do other work existing in significant numbers in the national economy - the occupation of numerical control tool programmer. AR pp. 14-15. Therefore, at step five the ALJ made a finding that the plaintiff was not disabled.

The Appeals Council considered the plaintiff's request for review and denied the request, affirming the ALJ's decision on July 11, 2009. AR pp. 1-3. Plaintiff then filed this petition for judicial review challenging the final decision of the Commissioner that he is not disabled.

## **Analysis**

Plaintiff asserted that the ALJ made two errors of law which resulted in the wrongful denial of his disability benefits. Plaintiff argued first that the ALJ committed reversible error in considering the evidence from his treating physician, Dr. Burdine.

---

[4](...continued)
functional capacity determination is necessary to proceed to steps four and five of the disability analysis. AR p. 11.

[5] 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 1, Rule 201.25.

Plaintiff argued that the ALJ erred by failing to comply with the Social Security regulations which require deference to and explanation for the amount of weight given to the medical opinions of treating physicians.

The Commissioner argued that the ALJ did not commit reversible error because: (1) the ALJ properly weighed the evidence, which is demonstrated by his citing the regulations in the decision and stating that Dr. Burdine rendered the same diagnosis in 2005 and 2007; (2) a detailed analysis of Dr. Burdine's opinions was not required because there was competing first-hand medical evidence that the ALJ found more credible; and, (3) even if the ALJ failed to follow the regulations in evaluating Dr. Burdine's opinions, the plaintiff cannot establish any prejudice from the ALJ's failure to do so.

The Commissioner's arguments are not supported by the law or the administrative record.

In *Newton v. Apfel*, the Fifth Circuit held that absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ is required to consider each of the factors under 20 C.F.R. § 404.1527(d)(2) before declining to give any weight to the opinions of the treating specialist. *Newton*, 209 F.3d at 456. Section

7

404.1527(d)(2)[6] requires consideration of: (1) the physician's length of treatment of the claimant,(2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record, (5) the consistency of the opinion with the record as a whole, and (6) the specialization of the treating physician. The regulation is also construed in Social Security Ruling ("SSR") 96-2p,[7] which states in relevant part:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted even if it does not meet the test for controlling weight.

Just as in *Newton,* this is not a case where there is reliable medical evidence from a treating or examining physician which controverts the plaintiff's treating specialist, Dr. Burdine. With the exception of Dr. Isaza, Dr. Burdine was the only physician who treated or examined the plaintiff for his severe back condition. Dr. Burdine's medical records indicate that Dr. Isaza did a consultative examination to advise whether surgery would help the

---

[6] Under Title XVI the regulation is 20 C.F.R. § 416.927(d)(2).

[7] SSR 96-2p, 1996 WL 374188 (S.S.A. July 2, 1996).

8

plaintiff, but the administrative record does not contain any records or reports from Dr. Isaza.[8] The state agency medical consultant reviewed the medical records and evaluated the plaintiff's physical residual functional capacity in September 2006, but she never examined or treated the plaintiff.[9]

The Commissioner attempted to establish that *Newton's* holding is not applicable here because there was competing, first-hand medical evidence from psychologist Maxine Campbell-Flint. Campbell-Flint performed a consultative psychological examination to assess the plaintiff's mental status.[10] Her report of the plaintiff's statement about employers' reactions to his work-related injury and limitations is not competing first-hand medical evidence related to the plaintiff's severe back impairment or its affect on his ability to work. Nor is there any indication in the ALJ's decision that he used this one statement from Campbell-Flint's report in considering and weighing the opinions of Dr. Burdine.

Review of the ALJ's decision as a whole demonstrates that the ALJ summarily rejected the opinions of Dr. Burdine without any

---

[8] AR pp. 168-69, 178.

[9] AR pp. 230-37 (physical residual functional capacity assessment of medical consultant Michele Benitez dated 09/27/2006).

[10] AR pp. 210-13 (Campbell-Flint psychological evaluation 8/21/06). The ALJ found that the plaintiff's depression was not severe. Plaintiff did not contest this finding. AR p. 11.

9

competing first-hand medical evidence from a treating or examining physician, and without any explanation at all, much less the detailed analysis called for in the regulations.[11] The ALJ did not even mention Dr. Burdine's April 26, 2007 assessment/opinion of the plaintiff's physical abilities.[12] Nor did the ALJ mention the assessment of the non-examining state agency medical consultant, Dr. Benitez. Although the ALJ cited the applicable regulations, it is impossible to determine how the ALJ weighed the medical evidence, various reports and opinions in making the findings which are critical at the final steps of the disability analysis.

The Commissioner's argument that the plaintiff cannot show any

---

[11] The Commissioner also asserted that the ALJ did not err in summarily rejecting Dr. Burdine's assessment because a doctor's statements that a claimant is disabled or unable to work are not medical opinions entitled to controlling weight or special significance. They are legal conclusions on issues reserved to the Commissioner. *See*, *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). This argument is also without merit. The record reflects that in April 2007, after treating the plaintiff continuously from 2003, Dr. Burdine evaluated the plaintiff's physical abilities during an eight hour work day. Dr. Burdine did not state an opinion that the plaintiff was disabled or unable to work.

[12] The only functional capacity evaluation mentioned by the ALJ was the one which placed the plaintiff on light duty status. AR p. 12. The ALJ did not specifically state as such, but this appears to be a reference to the evaluation the plaintiff underwent in 2004 after completing physical therapy. AR pp. 138-50, 179-81. Dr. Burdine considered this evaluation in October 2004 to return the plaintiff to work on light duty. However, subsequently the plaintiff's back impairment/limitations prevented him from completing a full day of work, multiple conservative treatments failed and after reviewing the plaintiff's July 2005 MRI, Dr. Burdine stated that it showed a worsening of the plaintiff's condition. AR p. 168.

prejudice resulted from the ALJ's *Newton* error is without merit for two reasons. A review of the hearing testimony by the vocational expert shows that consideration and weighing of Dr. Burdine's opinions is crucial in this case. Accepting his April 2007 assessment could result in a finding that the plaintiff cannot do any alternative work in the national economy. AR p. 49. Furthermore, if the Commissioner's harmless error argument is accepted, the court would be required as an initial matter to analyze and weigh all the evidence. This would be contrary to the established principle that on judicial review the court cannot try issues de novo, weigh the evidence or substitute its findings for those of the Commissioner.[13] Therefore, the Commissioner's decision must be reversed and the case remanded to the Commissioner to evaluate the evidence under the proper legal standards and render new findings and a new decision on the plaintiff's claim.

Plaintiff also argued that the ALJ committed reversible error at step five when he concluded that only one job with 120 positions in Louisiana and 17,850 in the national economy constituted a significant number of jobs available to the plaintiff.[14] In light of the determination that the decision should be reversed and the

---

[13] The decision of the ALJ must stand or fall with the reasons set forth in the ALJ's decision as adopted by the Appeals Council. *Newton*, 209 F.3d at 455.

[14] The one job identified by vocational expert Mungall was numerical control tool programmer. AR pp. 15, 48-49.

case remanded based on the first error argued by the plaintiff, it is unnecessary to analyze or resolve this legal issue.

### **Conclusion**

Accordingly, under sentence four of 42 U.S.C. § 405(g) the final decision of Michael J. Astrue, Commissioner of Social Security, denying the plaintiff's application for disability and supplemental security income (SSI) benefits is reversed.  Judgment will be entered remanding the case for the Commissioner to correct his legal error, and conduct any administrative proceedings necessary to complete the record and issue a new decision.

Baton Rouge, Louisiana, December 9, 2010.

*Signature*

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE